**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

STATE OF WEST VIRGINIA, *ex rel.*
DARRELL V. MCGRAW, JR.,
ATTORNEY GENERAL,
        Plaintiff,
v.
                                         Civil Action No. 3:11-cv-0683

JPMORGAN CHASE & CO.
and CHASE BANK USA, N.A.,
        Defendants.
_____

STATE OF WEST VIRGINIA, *ex rel.*
DARRELL V. MCGRAW, JR.,
ATTORNEY GENERAL,
        Plaintiff,
v.
                                         Civil Action No. 3:11-cv-0688

DISCOVER FINANCIAL SERVICES,
INC., DISCOVER BANK, DFS SERVICES,
L.L.C., and AMERICAN BANKERS
MANAGEMENT COMPANY, INC.
        Defendants.
_____

STATE OF WEST VIRGINIA, *ex rel.*
DARRELL V. MCGRAW, JR.,
ATTORNEY GENERAL,
        Plaintiff,
v.
                                         Civil Action No. 3:11-cv-0689

GE MONEY BANK,
        Defendant.
_____

STATE OF WEST VIRGINIA, *ex rel.*
DARRELL V. MCGRAW, JR.,
ATTORNEY GENERAL,
        Plaintiff,
v.
                                       Civil Action No. 3:11-cv-0690

WORLD FINANCIAL NETWORK
NATIONAL BANK, CSI PROCESSING, LLC
and CCP NORTH AMERICA, LLC,
        Defendants.

STATE OF WEST VIRGINIA, *ex rel.*
DARRELL V. MCGRAW, JR.,
ATTORNEY GENERAL,
        Plaintiff,
v.                                                        Civil Action No. 3:11-cv-0691

FIRST PREMIER BANK,
FIRST PREMIER BANKCARD, and,
UNITED NATIONAL CORPORATION,
        Defendants.

---

STATE OF WEST VIRGINIA, *ex rel.*
DARRELL V. MCGRAW, JR.,
ATTORNEY GENERAL,
        Plaintiff,
v.                                                        Civil Action No. 3:11-cv-0693

BANK OF AMERICA CORPORATION and
FIA CARD SERVICES, N.A.,
        Defendants.

---

STATE OF WEST VIRGINIA, *ex rel.*
DARRELL V. MCGRAW, JR.,
ATTORNEY GENERAL,
        Plaintiff,
v.                                                        Civil Action No. 3:11-cv-0695

CITIGROUP INC. and CITIBANK, N.A.,
        Defendants.

---

STATE OF WEST VIRGINIA, *ex rel.*
DARRELL V. MCGRAW, JR.,
ATTORNEY GENERAL,
        Plaintiff,
v.                                                        Civil Action No. 3:11-cv-0717

HSBC BANK NEVADA, N.A., and
HSBC CARD SERVICES, INC.,
        Defendants.

### PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO REMAND AND FOR COSTS AND FEES

## **TABLE OF CONTENTS**

I.    THE BANK ACT REMEDY FOR "USURIOUS INTEREST", 12 U.S.C. § 86, DOES NOT APPLY TO NON-USURY CLAIMS. ..............................................................1

II.   THIS PURELY STATE LAW CASE DOES NOT TURN ON SUBSTANTIAL QUESTIONS OF DISPUTED FEDERAL LAW.................................................................7

      A.    DEFENDANTS CANNOT REMOVE A CASE BASED ON NON-COMPLETE PREEMPTION. ........................................................................9

      B.    THERE ARE NO SUBSTANTIAL FEDERAL ISSUES. ...................................10

III.  A CASE WITH ONE PLAINTIFF IS NOT A "MASS ACTION" OF ONE HUNDRED PLAINTIFFS, 28 U.S.C. §1332(d)(11).........................................................12

IV.   CONCLUSION..............................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abrego Abrego v. Dow Chem. Co.*,
　443 F.3d 676 (9th Cir. 2006) .................................................................................19

*Aburto v. Midland Credit Mgmt.*,
　No. 3:08-CV-1473, 2009 U.S. Dist. LEXIS 67467 (N.D. Tex. July 27, 2009)......................19

*Adams v. Matrixx Initiatives, Inc.*, No. CV091529,
　No. CV-09-1529-FJM, 2009 U.S. Dist. LEXIS 94587 (D. Ariz. Sept. 24, 2009)..................19

*Anderson v. Bayer Corp.*,
　610 F.3d 390 (7th Cir. 2010) .................................................................................15

*Avco Corp. v. Aero Lodge No. 735*,
　390 U.S. 557 (1968)..............................................................................................2

*Barbour v. Int'l Union*,
　640 F.3d 599 (4th Cir. 2011) .............................................................................1, 20

*Beneficial Nat'l Bank v. Anderson*,
　539 U.S. 1 (2003)................................................................................................1, 2

*Bryan v. BellSouth Communs.*,
　377 F.3d 424 (4th Cir. 2004) ..................................................................................9

*Bullard v. Burlington N. Santa Fe Ry Co.*,
　535 F.3d 759 (7th Cir. 2008) .................................................................................15

*California v. Powerex Corp.*,
　274 F. App'x 574 (9th Cir. 2008) .......................................................................9, 10

*Caterpillar Inc. v. Williams*,
　482 U.S. 386 (1987)........................................................................................7, 8, 9

*Connecticut v. Levi Strauss & Co.*,
　471 F. Supp. 363 (D. Conn. 1979).........................................................................17

*Connecticut v. Moody's Corp.*,
　2011 U.S. Dist. LEXIS 780, 2011 WL 63905,  (D. Conn. Jan. 5, 2011) ..............................18

*CVS Pharm., Inc. v. West Virginia ex rel. McGraw*,
　No. 11-224, 2011 U.S. LEXIS 8531 (U.S. Nov. 28, 2011) ......................................13

*D'Alessio v. N.Y. Stock Exch.,*
    258 F.3d 93 (2d Cir. 2001)....................................................................10

*Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.,*
    642 F.3d 728 (9th Cir. 2011) ...............................................................17

*First Bank v. DJL Props., LLC,*
    598 F.3d 915 (7th Cir. 2010) ...............................................................16

*Gilmore v. Bayer Corp.,*
    No. 09-986-GPM, 2009 U.S. Dist. LEXIS 115375 (S.D. Ill. Dec. 10, 2009) .......................19

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,*
    545 U.S. 308 (2005)..............................................................1, 7, 8, 10, 12

*Illinois v. Au Optronics, Inc.,*
    No. 10-cv-5720, 2011 U.S. Dist. LEXIS 61561 (N.D. Ill. June 6, 2011)..........................17, 18

*Illinois v. SDS West Corp.,*
    640 F. Supp. 2d 1047 (C.D. Ill. 2009) ...................................................16

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
    MDL No. 1827, 2011 U.S. Dist. LEXIS 17793, 2011 WL 560593
    (N.D. Cal. Feb. 15, 2011).....................................................................16

*Ins. Corp. of New York v. Monroe Bus Corp.,*
    491 F. Supp. 2d 430 (S.D.N.Y. 2007)......................................................10

*LG Display Co. v. Madigan,*
    No. 11-8017, 2011 U.S. App. LEXIS 23036
    (7th Cir. Ill. Nov. 18, 2011) ..............................................12, 13, 14, 15, 16, 17, 18

*Lontz v. Tharp,*
    413 F.3d 435 (4th Cir. 2005) ...........................................................7, 8, 9

*Louisiana ex rel. Caldwell v. Allstate Ins. Co.,*
    536 F.3d 418 (5th Cir. 2008) ...........................................................13, 16, 17

*Metropolitan Life Ins. Co. v. Taylor,*
    481 U.S. 58 (1987).............................................................................2

*Missouri ex rel. Koster v. Portfolio Recovery Assocs., Inc.,*
    686 F. Supp. 2d 942 (E.D. Mo. 2010)....................................................16

*Nat'l Consumers League v. General Mills, Inc.,*
    680 F. Supp. 2d 132 (D.D.C. 2010) ....................................................18

*Nuclear Engineering Co. v. Scott,*
    660 F.2d 241, 250 (7th Cir. 1981) .......................................................16

*Phipps v. Fed. Deposit Ins. Corp.,*
    417 F.3d 1006 (8th Cir. 2005) ................................................................................. 2, 6

*Smiley v. Citibank (S.D.), N.A.,*
    517 U.S. 735 (1996) ................................................................................................ 2, 6

*South Carolina v. AU Optronics Corp.,*
    No. 3:11-cv-00731-JFA, 2011 U.S. Dist. LEXIS 104213 (D. S.C. Sept. 14, 2011) ............... 14

*South Carolina v. LG Display Co.,*
    No. 3:11-cv-00729-JFM, 2011 U.S. Dist. LEXIS 104216 (D. S.C. Sept. 14, 2011) ............. 17

*Sparta Surgical Corp. v. NASD,*
    159 F.3d 1209 (9th Cir. 1998) .................................................................................. 10

*Tanoh v. Dow Chem. Co.,*
    561 F.3d 945 (9th Cir. 2009), *cert. denied*, 130 S. Ct. 187 (2009) .................................. 15, 20

*Washington v. Chimei Innolux Corp.,*
    659 F.3d 843 (9th Cir. 2011) ................................................................................... 17

*West Virginia ex rel. McGraw v. Capital One Bank (USA) N.A.,*
    3:10-0211, 2010 U.S. Dist. LEXIS 74639 (S.D. W. Va. July 22, 2010) ................. 2, 5, 6, 7, 12

*West Virginia ex rel. McGraw v. Capital One Bank (USA) N.A.,*
    No. 3-11-04492, 2011 U.S. Dist. LEXIS 89709 (S.D. W. Va. Aug. 11, 2011) .................. 2, 10

*West Virginia ex rel. McGraw v. Comcast Corp.,*
    705 F. Supp. 2d 441 (E.D. Pa. 2010) ..................................................................... 16, 17

*West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.,*
    646 F.3d 169 (4th Cir. 2011), *cert. denied*,
    No. 11-224, 2011 U.S. LEXIS 8531 (Nov. 28, 2011) ......................................... 13, 14, 17, 18

STATUTES

12 U.S.C. § 25b(b)(1) .............................................................................................. 11

12 U.S.C. § 25b(c) .................................................................................................. 11

12 U.S.C. § 86 ..................................................................................................... 1, 2

15 U.S.C § 78aa .................................................................................................... 10

28 U.S.C. § 1331 ................................................................................................... 10

28 U.S.C. § 1332(a) ................................................................................................ 19

28 U.S.C. §1332(d)(11) ........................................................................................ 12, 15

28 U.S.C. § 1332(d)(11)(A) ....................................................................................19

28 U.S.C. § 1332(d)(2) ...........................................................................................19

28 U.S.C. § 1332(d)(11)(B)(i) .........................................................1, 14, 15, 18, 19

28 U.S.C. § 1332(d)(11)(b)(ii)(III) ........................................................................18

28 U.S.C. § 1332(d)(11)(C) ....................................................................................20

28 U.S.C. § 1332(d)(11)(C)(i) ................................................................................20

28 USCS § 1407 .....................................................................................................20

28 USCS § 1711(2) ...........................................................................................14, 18

W. Va. Code § 46A-7-111(1) .................................................................................16

**OTHER AUTHORITIES**

12 C.F.R. § 7.4001(a) ...............................................................................................7

12 C.F.R. § 37.1(c) ...................................................................................................9

J.P.M.L. Rules of Procedure Rule 7.1 ....................................................................20

COMES NOW the State of West Virginia, ex rel. Darrell v. McGraw, Jr., Attorney General ("the State"), and files this Reply in response to Defendants' Joint Memorandum in Opposition to Plaintiff's Motion to Remand filed December 2, 2011 (hereinafter "Def. Opp.").

Defendants advance three removal theories -- complete preemption, non-complete preemption, and Class Action Fairness Act ("CAFA") removal. All three overwhelmingly fail for a simple reason: plain language. Each of Defendants' three removal theories ignores the language that *fundamentally* defines the subject matter jurisdiction at issue. For complete preemption, the plain language is "Usurious interest" from the very title of the allegedly completely preempting federal statute, 12 U.S.C. § 86. The plain language limits complete preemption to usury, yet there is no usury claim in the Complaints. For non-complete preemption, which Defendants inconstantly spin as the "substantial federal question" doctrine, the plain language is the defining word "substantial" from *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308 (2005). The parts of sentences in the Complaint that Defendants cherry pick as words that "can only refer to" unnamed federal disclosure forms cannot conceivably be called "substantial." For CAFA, the plain language is the number "100" and the letter "s" in "plaintiffs' claims" in 12 U.S.C. 1332(d)(11)(B)(i), requiring a minimum of 100 plaintiffs in a "mass action." One hundred plaintiffs are required for "mass action" removal, yet here there is only one.

As to each of the three removal theories, the prima facie, definitional plain language at the heart of the jurisdiction claimed *is not met.* It is black letter law that all doubts must be resolved in favor of remand. *Barbour v. Int'l Union,* 640 F.3d 599, 617 (4th Cir. 2011) (en banc) ("any doubts should be resolved in favor of state court jurisdiction."). These removals cannot meet this standard.

## I.  THE BANK ACT REMEDY FOR "USURIOUS INTEREST", 12 U.S.C. § 86, DOES NOT APPLY TO NON-USURY CLAIMS.

Complete preemption sufficient to allow removal was recognized in *Beneficial Nat'l Bank v. Anderson* only as to usury claims:

1

> **Only** if Congress intended § 86 to provide the exclusive cause of action **for usury claims** against national banks would the statute be comparable to the provisions that we construed in the *Avco [Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968)] and *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987)] cases.

539 U.S. 1, 9 (2003) (emph. supp.). A usury case is based on the contention that the ***rate*** of interest is too high. *See* 12 U.S.C. § 86 ("taking, receiving, reserving, or charging a rate of interest greater than is allowed"). These eight cases, like the numerous cases cited in the State's opening Memorandum,[1] do not seek recovery for usury. Defendants are repeating the arguments that this Court considered and rejected twice. *West Virginia ex rel. McGraw v. Capital One Bank (USA) N.A.*, 3:10-0211, 2010 U.S. Dist. LEXIS 74639 (S.D. W. Va. July 22, 2010) (Chambers, J.); *West Virginia ex rel. McGraw v. Capital One Bank (USA) N.A.*, No. 3-11-04492, 2011 U.S. Dist. LEXIS 89709 (S.D. W. Va. Aug. 11, 2011) (Chambers, J.). The Response is ***wholly unable*** to distinguish *Capital One*.

The defendant in a usury case is not faulted because *any* interest was charged. The point — the sole point — of a usury case is to challenge the quantum of the interest: "rate of interest greater than is allowed." 12 U.S.C. § 86. Only a tortured and self-serving misconstruction allows Defendants to characterize these cases as usury cases. For one thing, the Complaints address ancillary services other than credit protection plans. More to the point, even were credit protection plans the only service plans at issue, the gravamen of the State's actions is not to challenge the amount of the charges, but rather the fact of them. The Complaint does not say that the charges belong on the credit card bills, but just at a lower rate. The Complaint repeatedly details why the service plan charges should not be on the bills ***at all*** -- not at a lower rate, not at any rate:

---

[1] In response to the large body of case law remanding similar cases (*see* Remand Mem., 7-8), Defendants cite a comparatively small number of cases that are distinguishable. *See, e.g., Smiley v. Citibank (S.D.), N.A.*, 517 U.S. 735 (1996) (addressing late fees – not payment protection or other ancillary service fees); *Phipps v. Fed. Deposit Ins. Corp.*, 417 F.3d 1006, 1012 (8th Cir. 2005) (addressing loan origination and loan discount fees charged as compensation for the extension of credit and distinguishing "a charge 'specifically assigned' to cover the cost of [a] … service") (cited at Def. Opp., 9, 17).

- Paragraph 3 states that the credit card consumers "unknowingly and unintentionally sign up to receive ancillary services."

- Paragraph 4 explains the process whereby "Defendants often enroll consumers for such services without the consumers' consent."

- Paragraph 5 concludes with, "Defendants bill ineligible West Virginians for this coverage, even though their status at the time of enrollment prevents them from receiving benefits under the terms of these Payment Protection Plans."

- Paragraph 6 says that the consumer either did not want the plans or were not entitled to the benefits of the plans in the first instance.

- Paragraph 18 (the first paragraph in the Factual Background section) describes the marketing directed to vulnerable consumers.

- Paragraph 20 gives examples of the different services, including Identity Theft Protection, which purports to alert enrollees if something suspicious happens to their credit score.  Payment protection is only one type of service.

- Paragraph 21 explains why the consumers cannot determine what the ancillary services cover.

- Paragraph 24 explains that Defendants "are in a unique position" to charge for the ancillary services without the consent of the credit card holder.

- Paragraphs 25 through 35 describe how telemarketing is used to enroll cardholders in the ancillary service plans through deception.

- Paragraph 36 explains that the "refund" process is "set up on the assumption that consumers have been deceived and do not understand that they have been enrolled."

- Paragraph 37 and 38 explain that many cardholders are unaware they have made these payments because they do not know that they are in the plans or what the line-item charges on their credit card bills mean.

- Paragraph 39 points out the advantage to Defendants that customers who do not know they are in the plan in the first instance will not ask for plan benefits.

- Paragraphs 40 and 41 describe the difficulties in obtaining refunds.

- After three paragraphs detailing the marketing, Paragraph 45 states that "Defendants market their 'optional' Payment Protection Plans to individuals who do not qualify for the alleged benefits of the Plans."

- Paragraph 46 states that plans are marketed to elderly consumers for whom the entire benefit is illusory.  They are paying for protection from losing a job that they do not have in the first instance.

3

- Paragraphs 47 through 52 describe the inadequacy of disclosure and the changing nature of the plans and the deceptive marketing.

- Returning to the topic of senior citizens, Paragraph 53 states that, "West Virginia retired persons, many of whom are senior citizens, are charged for this service even though they are categorically excluded from receiving many of the benefits under the Plan."

- Paragraphs 54 and 55 explain that part-time workers, seasonal workers, those leaving a military tour of duty, and disabled persons are limited from receiving benefits.

- Paragraph 56 explains that cardholders continued to be billed after a change in status makes them no longer eligible to receive benefits.

- Paragraphs 57 and 58 describe the confusing and misleading manner in which the plans are operated.

- Paragraph 59 explains that in some instances these plans operate to cause subscribers to incur over-the-limit fees.

- Paragraphs 60 through 62 explain why the "customer service" support is unfair to consumers by design, and that they are systematically treated unfairly when they try to call about the plans.

- The next several paragraphs, which describe the unconscionable practices that are generating handsome revenues for Defendants, include two statements that the service plans are "essentially worthless," but at no point do any of these paragraphs read as, "the rate of interest is too high." The point in Paragraph 64 is that Defendants have made the service plan "so confusing…and…so difficult…that it is essentially worthless." Paragraph 65 calls the plans "virtually worthless" in the context that these Defendants "prey on the financially insecure." Paragraph 66 echoes the theme that these plans are operated "to the detriment of their most vulnerable customers."

*E.g.,* Complaint in 3:11-cv-0683 (filed as an exhibit to NOR, at Dkt. 1).

For this to be a usury case seeking damages because the rate of interest was too high, all of the conduct described above would be acceptable to the Attorney General if only the service plan charges were lower. Obviously, this is not what the Complaint is saying. The Attorney General is not saying that targeting the most vulnerable consumers is fine if only this unconscionable banking scheme would lower the cost of illusory services. Here, vulnerable consumers are paying for nothing and they did not agree to do so. If the Defendants were adding only one cent to the bill of an elderly, retired person to "protect" him from losing a job *he does*

*not have*, that would be one cent too many.  If the Defendants were adding only one cent to the credit cards without any valid authorization, that be unacceptable.  These practices are unacceptable at any rate.

In an attempt to distinguish this Court's prior decision in *Capital One,* Defendants announce in *ipse dixit* fashion that that case allegedly "was a close one," and argue it is "readily distinguishable" because, "There, the Attorney General … accused the defendant of imposing deceptive charges on credit card users who exceed their credit limit."  Def. Opp. 15.  However, *Capital One* also challenged "Payment Protection Plans" sold incident to credit cards.  Appendix A, Complaint in No. 10-C-7-N (Mason County, W. Va. Jan. 20, 2010), at pages 7-8 (filed as Exhibit A to the Notice of Removal in 3:10-0211 (S.D. W. Va. March 2, 2010)).  Defendants argue (incorrectly) that "as long as *any* of the allegations in the Complaints are directed at [payment protection] fees, the Complaints were properly removed."  Def. Opp., 11-12.  Were this true, then the multiple paragraphs in *Capital One* that challenge the Payment Protection Plans would have made that case removable, yet this Court remanded it twice.  Furthermore, even were *Capital One* not also about Payment Protection Plans, Defendants are unable to distinguish it.  According to Defendants' arguments, overdraft charges and the credit protection service plan costs are *both* "interest" charges under the National Bank Act.  *E.g.*, NOR in 3:11-cv-0683, 7 ¶19(c).

There is *absolutely nothing* that the State says here that is any more akin to usury than the complaint in *Capital One*.  Indeed, none of the language Defendants point to here was absent from the *Capital One* complaint (*compare* Appendix A).  Cherry-picking a phrase from a list of offenses, Defendants argue (at Def. Opp., 12) that the Complaints at Count I state that the Defendants collected excess charges.  The *Capital One* complaint repeatedly said the same thing. Appx. A, 16 ¶99 ("collecting of charges in excess of those permitted"), 17 ¶¶100-02 ("excess" charge or charges); *see also id.* at 18 ¶¶109-12, 19 ¶¶119-22, 20-21 ¶¶128-31, 22 ¶¶139-42, 23-24 ¶¶149-52, 24-25 ¶¶158-61.  Next, Defendants argue that the Complaints accuse the banks of imposing "unconscionable terms and provisions."  Def. Opp., 12-13.  The *Capital One* complaint

5

said the same thing.  Appx. A, 3 ¶13 ("unconscionable terms or provisions of consumer loans"), 16 ¶96 (same), 19 ¶117 (same), 20 ¶126 ("unconscionable terms or provisions of consumer credit sales or consumer loans"), 22 ¶137 ("unconscionable terms or provisions of consumer loans"), 23 ¶147 (same), 24 ¶156.  Defendants point to language in the Complaints here to the effect that the ancillary service plans fail to provide a benefit to consumers.  Def. Opp., 13.  The *Capital One* complaint said the same thing.  Appx. A, 3 ¶13 ("selling service to consumers who could receive no benefits therefrom").  In fact, not only does *Capital One* say the same thing, but it does so in the context of "Payment Protection Plan" services.  Appx. A, 7-9 ¶¶38-48.[2]

Finally, although this Court need not reach this issue and can resolve the complete preemption question solely on the rationale of *Capital One*, the State notes that these ancillary service plan charges are not interest in the first instance.  None of the authorities cited (at Def. Opp., 9) define the ancillary services as either interest or "numerical periodic rates."  In finding that late fees are interest, *Smiley* defined interest as compensation for the use of money.  *Smiley*, 517 U.S. at 745.  The payment protection plan charges, were they compensation for anything, are not compensation for the use of money, but rather are charges specifically assigned to cover the cost of a putative service.  According to Defendants' own authority (cited at Def. Opp., 9), such charges are not interest.[3]  Participation in these plans is not mandatory (*e.g.*, Complaint in 11-cv-

---

[2] As a distraction from *Capital One*, Defendants filed copies of complaints in other cases against them, representing to the Court that Defendants know the State's work product protected information, i.e. that the same counsel who drafted the eight Complaints also drafted the class action complaints.  Def. Opp., 7, 14; Def. Appx., Exs. W-Y.  Notably, the basis for jurisdiction asserted in these other cases is the Class Action Fairness Act; these other cases, unlike this one, are class actions.  Def. Appx., Ex. W, 4-5 ¶¶15-16; X, 4 ¶¶11-12; Ex. Y, 3-4 ¶9.

Twice now – first in some of the removal notices and now in the remand opposition – Defendants fixate on the identity of counsel, as if the name of the lawyer on the pleading has anything to do with subject matter jurisdiction.  Defendants are unable to respond to the State's argument that CAFA does not turn on the identity of counsel (Remand Mem., 29-30).  Yet, without any legal citation to any authority that supports the proposition that the selection of counsel is relevant to whether the federal judiciary has subject matter jurisdiction over the claims pled, Defendants persist with these arguments.

[3] *See Phipps, supra,* 417 F.3d at 1012 ("the OCC has reasoned that fees charged for opening an account with a bank are interest, because these fees are payments made to compensate a creditor

6

0693, at 5 ¶19).  Because paying for these service plans is not a pre-condition for obtaining the credit card nor a condition for using it, the payments are not compensation "for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended."  12 C.F.R. § 7.4001(a).  This regulation does not list "payment protection plan fees" as either among the things included in interest or among the things that are not interest.   The fees are most analogous to one of the exclusions, *e.g.*, premiums or commissions attributable to insurance guaranteeing repayment.

In sum, this Court has already ruled on these matters twice in *Capital One*, and Defendants present no intervening authority that would change the Court's prior decisions.  Even were the ancillary service charges interest as defined in the National Bank Act, which is denied, the clear majority of cases already researched by this Court in *Capital One* establish that there is no complete preemption.[4]

## II.  THIS PURELY STATE LAW CASE DOES NOT TURN ON SUBSTANTIAL QUESTIONS OF DISPUTED FEDERAL LAW.

The second removal theory is advanced by Defendants in only five of the eight removal notices, and even then the theory only applies to some but not all of the Defendants.  Defendants' briefing on this issue draws us deep into the weeds of banking regulation, which is a handy distraction from the controlling case law that Defendants either ignore entirely (*e.g. Caterpillar* and *Lontz*),[5] or only cursorily acknowledge (*e.g.*, *Grable*, which is cited but twice).  This Court does not need to consider the minutiae of federal credit protection plan regulation because Defendants' arguments – even if true – are not relevant.  This is not a federal banking question, but rather a point of civil procedure.  This Court may decline Defendants' invitation to entertain

---

for extending credit **rather than a charge 'specifically assigned' to cover the cost of an activity or service.")** (citing OCC Interpretive Letter No. 803; emph. supp.).
[4]  Because the national banks' argument is abundantly erroneous and irreconcilable with this Court's prior opinions, this Court need not reach the other issues raised, *e.g.,* whether the state bank/savings associations are able to adopt the same arguments as the national banks; the State stands on its prior briefing on these issues.
[5] *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Lontz v. Tharp*, 413 F.3d 435 (4th Cir. 2005).

a veritable spaghetti of banking cites thrown against the proverbial wall.  All of the federal banking authorities quoted, cited, and appended to the Response are calculated to appear, or perhaps at least weigh in, as "substantial."  They are not.

That there are federal materials regarding credit protection plans is apropos to nothing here unless the federal judiciary has subject matter jurisdiction over these state law Complaints. The Response vacillates between two arguments in an attempt to evade the fatal omissions in each.  First, Defendants rely on a non-complete preemption defense which is categorically not a valid basis for removal.  The law is clear, particularly in this Circuit, that removing Defendants either make a play for that very rare animal "complete preemption" or find a ground other than preemption.  Defendants' Part 37 theory *does neither*.  Second, in an attempt to justify removing on a federal defense, Defendants announce that the federal regulation is not part of a preemption defense – even though the Response spends pages on ordinary preemption arguments – because the State allegedly based five of the eight Complaints on the regulation.  At this point, Defendants are advancing federal subject matter jurisdiction by surmise.  There are no federal causes of action pled in any of the Complaints.  No matter: Defendants extract snippets of selected language, and through their linguistic alchemy, we learn that the Complaints mean the opposite of what they say.  Simply put, to get out of *Lontz*, which Defendants violate by advancing a non-complete preemption defense, Defendants violate *Caterpillar,* which makes plaintiffs the masters of their complaints.

*Grable* cannot salvage the lapses in Defendants' analysis because the unnamed federal regulation, even if it is addressed at one point as five of the cases are resolved on the merits, could not possibly be "substantial" as defined by the *Grable* Court.  None of the cases cited in the Response undercuts the copious case law recognizing that *Grable* jurisdiction is narrow in scope and not established merely because a state court may address a point of federal law.  This regulation cannot come close to meeting the *Grable* standard:  The banks argue only that as to some of the Defendants in five of the cases, a federal regulation is applicable to some of the service plan charges at issue.  Neither *Grable* nor its progeny remotely stands for the proposition

8

that subject matter jurisdiction is generated by the insubstantial circumstance of a federal regulation being addressed with regard to a minority fraction of the facts in a purely state-law complaint.

## A. DEFENDANTS CANNOT REMOVE A CASE BASED ON NON-COMPLETE PREEMPTION.

Defendants do not address *Lontz*, *Caterpillar*, or any of the other Supreme Court and Fourth Circuit decisions quoted by the State in support of the proposition that a federal preemption defense, even one at the heart of the case, is not grounds for removal. Pl's Mem. in Supp. of Mot. to Remand and for Costs and Fees ("Remand Mem."), 16-17. Nor do Defendants deny that their argument under 12 C.F.R. § 37.1(c) cannot establish complete preemption.

Defendants' Opposition persists in advancing ordinary preemption (*see* Def. Opp., 25-29), heedless of the fact that these arguments, even if true, fail to justify removal to federal court. In the midst of this irrelevant discussion, Defendants feature an unpublished Ninth Circuit decision, parenthetically cited for the misleading premise that "substantial federal question existed in state attorney general action where federal law preempted the field." Def. Opp., 26. Neither this case nor the cases tucked into the following footnote (n. 36) defeats the prohibition against removing on an ordinary preemption defense. In the only Fourth Circuit decision, *Bryan v. BellSouth Communs.,* 377 F.3d 424 (4th Cir. 2004) (cited at Def. Opp., 26 n.36), the court declined to decide preemption, instead reasoning that because tariffs carry the force of federal law, cases to enforce or invalidate tariffs arise under federal law. *Id.* at 429 & n. 5, n. 6. The unpublished Ninth Circuit decision (cited at Def. Opp., 26) did not say that field preemption was a basis for removal; in contrast, the court reasoned that jurisdiction existed under the Federal Power Act because the plaintiff's claims turned on a federal issue over which the Federal Energy Regulatory Commission has exclusive jurisdiction. *California v. Powerex Corp.,* 274 F. App'x 574 (9th Cir. 2008). After finding federal question jurisdiction on grounds that do not remotely exist here, the court discussed field preemption in the context of a motion to dismiss. *Id.* at 575-76. Defendants' description of the case is inaccurate because the motion to dismiss – and not the

9

motion to remand – was decided on grounds of ordinary preemption.[6]   Defendants cite no authority to justify removal on an ordinary preemption defense.

### B.  THERE ARE NO SUBSTANTIAL FEDERAL ISSUES.

Not only do Defendants give short shrift to the Supreme Court and Fourth Circuit's repeated statements that ordinary preemption is not a basis for removal, but Defendants do not address this Court's decision in *Capital One*, *supra*, 2011 U.S. Dist. LEXIS 89709, which distinguished *Grable*.  As previously briefed, the only disputed issue in *Grable* was the meaning of a section of the Internal Revenue Code.  Remand Mem., 22-25.

In their attempts to squeeze these cases into the small category *Grable* exemplifies, Defendants appoint themselves as decipherers of the Complaints, describing to the Court the clues scattered in phrases here and there which, when decoded by Defendants, all coincidentally lead to the same federal regulation that Defendants have chosen for their preemption defense. According to this argument, Part 37 is saved from the irrelevance assigned to preemption defenses by the fortuity that Part 37 was pled by the State – well, not pled as in actually stating the words on the page, but trust the banks, it's there.

If the well-pleaded complaint rule has any meaning, then the Court must reject Defendants' argument that, "the Attorney General['s] … affirmative claims for relief allege that the defendants have violated consumer protection standards that can *only* be federal standards."

---

[6] The other Ninth Circuit case invoked by Defendants is *Sparta Surgical Corp. v. NASD,* 159 F.3d 1209, 1212-13 (9th Cir. 1998), wherein the court found that jurisdiction existed under 15 U.S.C. § 78aa, which particularly confers exclusive jurisdiction upon the federal courts for suits brought to enforce the Exchange Act or rules and regulations promulgated under it.  "Sparta specifically alleged violation of exchange rules, a matter committed exclusively to federal jurisdiction." *Id.* at 1213.  Dicta in *Sparta* supports **the State's** position: the court observed that, "Sparta's argument w**ould have merit if jurisdiction in this case had been solely predicated on 28 U.S.C. § 1331[.]**"  159 F.3d at 1212 (emph. supp).  *D'Alessio v. N.Y. Stock Exch., Inc.,* 258 F.3d 93, 102 (2d Cir. 2001), is another Exchange Act case; it cited *Sparta*.
   *Ins. Corp. of New York v. Monroe Bus Corp.,* 491 F. Supp. 2d 430 (S.D.N.Y. 2007), also is distinguishable.  That court found that the principal rights and obligations in an insurance dispute were created by federal law because the contractual provisions in question were required by federal law, and the claim for reimbursement was based not on state law but on a provision of the federally-required form.  *Id.* at 436-37.

(Def. Opp., 26) (emph. in orig.).  No federal statute, regulation, or agency is referenced in any of the five Complaints; for Defendants to argue that a "catch all" provision could *only* mean what Defendants choose it to mean is at dramatic odds with the Complaints' language that, "The State asserts no claims arising out of, under or in any way preempted by the laws (common, statutory and administrative) of the United States… The State specifically disclaims any such claims…" *See* Bank of Am. Complaint (filed in 3:11-cv-0693, exhibit to Dkt. 1), 4 ¶15; Citigroup Complaint (filed in 3:11-cv-0695, exhibit to Dkt. 1), 4 ¶15; GE Complaint (filed in 3:11-cv-0689, exhibit to Dkt. 1), 4 ¶14; HSBC Complaint (filed in 3:11-cv-0717, exhibit to Dkt. 1), 4 ¶15; JPMorgan Complaint (filed in 3:11-cv-0683 as exhibit to Dkt. 1), 4 ¶15.

Further, Defendants do not deny that only five of these eight Notices of Removal allege the Part 37 theory, and even then as to only some Defendants.  This is because Part 37 only applies to federal banks, and three of these cases do not have a federal bank named as a Defendant.  But the Complaints are all the same.  Were it true, as Defendants theorize, that the Complaints as to the five banks are substantially raising a federal question and that substantial language refers to Part 37 in some rose-by-another-name fashion, then how can the Complaints be the same?  If, as Defendants have deduced, the magic words opening their path to federal court "can only refer to" Part 37, then the words would not be in the other cases.  But they are. *See* Def. Opp., 23-24 notes 32-34 (citing eight Complaints).  The difference is that in five of these cases, but not the other three, the Defendants will raise Part 37 as a preemption *defense*. There is no difference in any of the Complaints because the State is not raising any federal question.

Independently, state consumer protection laws are not preempted.   Remand Mem., 17-22.  This was stated in the case law and is now even more clear in the recent Dodd-Frank Act. 12 U.S.C. § 25b(b)(1), (c).  In their Opposition, Defendants essentially admit that Dodd-Frank's preemption standard limits them to conflict preemption (*see* Def. Opp., 28 n.39), but then fail to articulate what, precisely, the conflict is.  There is no federal mandate forcing them to charge customers without their consent or to target the most vulnerable for deceptive marketing.

11

The State's request for an injunction prohibiting the deceptive practices on a go-forward basis must be decided under the current law.   Overlooking the injunction issues raised in the Complaints, Defendants try to minimize the new law by asserting, without proof, that "the bulk of the agreements at issue in these cases" were made "on or before July 21, 2010," such that Dodd-Frank allegedly will not apply to those agreements.  Def. Opp., 27-28.  Just assuming for the sake of argument that this is accurate (which is not conceded), due to this effective date, Dodd-Frank would not have applied in *Capital One* either, and this Court found no federal question jurisdiction there.   There is no basis for coming to a different conclusion; the only change in the law since *Capital One* is that Dodd-Frank makes the Defendants' argument *weaker*.

In short, Part 37 is a small issue, assuming it even is an issue.  According to Defendants, Part 37 arguably applies to some of the types of contracts (payment protection plans but not the identity theft plans) with some of the Defendants (the national banks and savings association), for some time period (entered before July 21, 2010).  Even if Defendants are correct in their Part 37 analysis, which is denied, they are fighting about an insubstantial part of these five cases.

Finally, in response to *Grable*'s third requirement that the balance of federal and state powers not be disturbed, Defendants cite a United States District Court decision outside of this Circuit.  Def. Opp., 30.  Both the Supreme Court and the Fourth Circuit have recognized that comity demands that the State cannot be involuntarily dragged into federal court absent a clear rule.  Remand Mem., 25-26.  There is no rule, much less a clear one, requiring that the State litigate its state consumer protection laws in federal court.

## III.   A CASE WITH ONE PLAINTIFF IS NOT A "MASS ACTION" OF ONE HUNDRED PLAINTIFFS, 28 U.S.C. §1332(d)(11).

The legal infirmities in the removal notices have become more acute since the filing of the State's remand motion.  On November 18, 2011, the Seventh Circuit joined the Fourth and Ninth Circuits in deciding that cases brought by a state attorney general as *parens paitraie* are not removable under CAFA.  *LG Display Co. v. Madigan*, No. 11-8017, 2011 U.S. App. LEXIS

23036 (7th Cir. Ill. Nov. 18, 2011). Ten days later, on November 28, 2011, the United States Supreme Court denied the writ of certiorari filed in *CVS Pharm., Inc. v. West Virginia ex rel. McGraw*, No. 11-224, 2011 U.S. LEXIS 8531 (U.S. Nov. 28, 2011).

While predictable, the denial of certiorari creates a fundamental flaw in the removals' CAFA arguments, as Defendants depended on the assertion that certiorari would be granted:

> To the extent that the Fourth Circuit's decision in *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.,* 646 F.3d 169 (4th Cir. 2011), would support a contrary conclusion, that decision conflicts with the Fifth Circuit's decision in *[Louisiana ex rel. Caldwell v. Allstate Ins. Co.,* 536 F.3d 418 (5th Cir. 2008)], and a petition for a writ of certiorari has been filed asking the Supreme Court to reverse the Fourth Circuit's decision. *See CVS Pharmacy, Inc., v. West Virginia ex rel. McGraw,* No. 11-224 (U.S. Aug. 18, 2011).

Not. of Removal in 3:11-cv-0683, 11 ¶30.[7] Defendants' leading CAFA grounds no longer exists.

Ignoring the Seventh Circuit's recent decision, Defendants opine that the Supreme Court "likely based [the denial of certiorari] on the Attorney General's argument that *CVS Pharmacy* did not conflict with *Caldwell*." Def. Opp., 39. Defendants' claimed knowledge of the likely thoughts of the High Court elides over the *reasons* the Attorney General articulated to the Supreme Court, none of which supports the Defendants' argument that a single-Plaintiff case is a 100-person "mass action." The Attorney General distinguished *Caldwell* primarily on the grounds that the Louisiana Attorney General's powers are different because the state laws are different. Def. Appx., Ex. Z, at 8.[8]

---

[7] *See also* Notice of Removal filed in 3:11-cv-0691, 5 ¶18 ("a petition for a writ of certiorari has been filed asking the Supreme Court to reverse the Fourth Circuit's decision"); Notice of Removal filed in 3:11-cv-0693, 13 ¶33 (same); Notice of Removal filed in 3:11-cv-0695, 11 ¶30 ("a petition for a writ of certiorari has been filed asking the Supreme Court to reverse the decision."); Notice of Removal filed in 3:11-cv-0688, 8 ¶17 ("a petition for writ of certiorari has been filed requesting that the United States Supreme Court reverse the Fourth Circuit's decision"); Notice of Removal filed in 3:11-cv-0689, 13 ¶31 (same); Notice of Removal filed in 3:11-cv-0717, 8 ¶21 (acknowledging *CVS Pharm.* in a "but see" cite and adding "petition for cert. filed"); Notice of Removal filed in 3:11-cv-0690, 13-14 n. 1 31 ("a petition for a writ of certiorari has been filed asking the Supreme Court to reverse the Fourth Circuit's decision.").

[8] The Attorney General then pointed out that "the *Caldwell* court explicitly declined to decide whether that suit also met the definition of a CAFA class action." Ex. Z, 9. A footnote responded to arguments by the proponents of certification by explaining that they were confusing class and mass actions, and by informing the High Court that the Petitioners had failed to satisfy

To borrow a phrase from the Defendants, it had appeared that the "mass action" argument in the removal notices was a "throw-away"; it was according to Defendants' definition.[9]  For several, independent reasons, this case is not a "mass action":

      1.    *Mass actions require a minimum of 100 plaintiffs. 28 U.S.C. § 1332(d)(11)(B)(i).*
To qualify as a "mass action" there must be 100 plaintiffs:

> As used in subparagraph (A), the term "mass action" means any civil action (except a civil action within the scope of section 1711(2)) in which **monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact,** except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a).

28 U.S.C. § 1332(d)(11)(B)(i) (emph. supp.).  In this case, there is *one plaintiff.*  The Attorney is exercising his quasi-sovereign power on behalf of the state, rather than prosecuting consumers' claims which share common questions of law or fact.  *CVS Pharm.*, 646 F.3d at 176; *see also LG Display Co. v. Madigan, supra*, 2011 U.S. App. LEXIS 23036 (7th Cir. Ill. Nov. 18, 2011) (rejecting class action or mass action removal in case brought by Illinois Attorney General); *South Carolina v. AU Optronics Corp.*, No. 3:11-cv-00731-JFA, 2011 U.S. Dist. LEXIS 104213 (D. S.C. Sept. 14, 2011) ("This Court concludes that, for the same reasons that it found the State to be a real party in interest, this suit does not constitute a 'mass action' under CAFA.").

The Seventh Circuit explained that "the plain language" of CAFA forecloses the argument that a case brought by the Illinois Attorney General is a "mass action":

> As a fallback, defendants argue that this case is a mass action because "monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. §

---

the statutory $75,000 amount-in-controversy requirement or otherwise claim a mass action.  *Id.* at 9 n.6.  The Attorney General did not say, as suggested by Defendants, that the Fourth Circuit's decision "had nothing to do with 'mass action' removal" (Def. Opp., 36).  The Supreme Court is concerned with the ***holdings*** of cases as pertinent to the depths of inter-Circuit splits.  The issue for this Court, by contrast, is whether federal jurisdiction is beyond doubt.

[9] Defendants defined the Attorney General's amount in controversy objection as an alleged "throw-away" argument (Def. Opp., 36) presumably because the objection appears at the end of the subsection.  Defendants' "mass action" arguments do as well.  *E.g.*, Dkt. 1 at 3:11-cv-0693, NOR, 13 ¶35.

> 1332(d)(11)(B)(i). Here, however, only the Illinois Attorney General makes a claim for damages (among other things), precisely as authorized by the [Illinois Antitrust Act]. **By the plain language of § 1332, this suit is not removable as a mass action.**

*Madigan, supra,* at *9 (citing *Anderson v. Bayer Corp.,* 610 F.3d 390, 393 (7th Cir. 2010) (emph. supp.)); *see also Tanoh v. Dow Chem. Co.,* 561 F.3d 945, 953 (9th Cir. 2009) ("By its plain terms, § 1332(d)(11) therefore does not apply to plaintiffs' claims in this case, as none of the seven state court actions involves the claims of one hundred or more plaintiffs, and neither the parties nor the trial court has proposed consolidating the actions for trial."), *cert. denied,* 130 S. Ct. 187 (2009); Remand Mem., 30-31 & n. 41 (citing additional authorities).

Darrell V. McGraw, Jr. is not 100 plaintiffs. Defendants theorize that one plaintiff satisfies the statutory requirement by quoting the words "*claims* of 100 or more *persons*" (Def. Opp., 33), and ignoring the words "the plaintiffs' claims" in the very same sentence. To this end, Defendants misplace reliance on a prior Seventh Circuit case, *Bullard v. Burlington N. Santa Fe Ry. Co.,* 535 F.3d 759 (7th Cir. 2008) (quoted at Def. Opp., 33-34). Defendants quote the *Bullard* court's statement that, "[t]he question is not whether 100 or more plaintiffs answer a roll call in court[.]" Def. Opp., 33. *Bullard,* however, did not suggest that the statutory language requiring at least 100 plaintiffs could be interpreted to mean one plaintiff. The court was saying that all 100 plaintiffs do not have to be in the courtroom for their cases to be tried jointly, if for example, "A trial of 10 exemplary plaintiffs [was] followed by application of issue or claim preclusion to 134 more plaintiffs without another trial[.]" 535 F.3d at 762. *Bullard* was referring to 144 plaintiffs, not one.

To multiply Darrell McGraw into 100 people, Defendants employ two devices for which there is no support in the text of CAFA – a "real party in interest" theory and a claim-by-claim approach. In its thoughtful opinion penned less than a month ago, the Seventh Circuit surveyed the nationwide jurisprudence on CAFA removal of state AG actions, and explained why such cases are not removable under CAFA and why this claim-by-claim analysis and the "real party in interest" theory is flatly wrong:

15

In this case, the district court rejected the claim-by-claim analysis used in [*Caldwell*] and *Comcast*. The district court was in good company; claim-by-claim analysis has been questioned by a number of courts. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2011 U.S. Dist. LEXIS 17793, 2011 WL 560593, *3 (N.D. Cal. Feb. 15, 2011); *Missouri ex rel. Koster v. Portfolio Recovery Assocs., Inc.*, 686 F. Supp. 2d 942, 945-46 (E.D. Mo. 2010); *Illinois v. SDS West Corp.*, 640 F. Supp. 2d 1047, 1050-53 (C.D. Ill. 2009). Instead, the district court "look[ed] to the complaint as a whole" and concluded that the State is the real party in interest. We agree with the district court's approach. Whether a state is the real party in interest in a suit "is a question to be determined from the 'essential nature and effect of the proceeding.'" *Nuclear Engineering Co. v. Scott*, 660 F.2d 241, 250 (7th Cir. 1981).... The courts in [*Caldwell*] and *Comcast* did not adopt the claim-by-claim approach based on any language in CAFA itself, nor is there any such language to be found. The Fifth Circuit rationalized its claim-by-claim approach as consistent with Congress' intent to broaden federal jurisdiction over class actions through CAFA. But, as Judge Illston pointed out in her order remanding the *parens patriae* actions filed by the State Attorney Generals of California and Washington, just because CAFA was meant to expand federal courts' jurisdiction over class actions, it does not follow that "federal courts are required to deviate from the traditional 'whole complaint' analysis when evaluating whether a State is the real party in interest in a *parens patriae* case." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 U.S. Dist. LEXIS 17793, 2011 WL 560593, *3. *See also First Bank v. DJL Props., LLC*, 598 F.3d 915, 917 (7th Cir. 2010) ("It does not follow from the fact that the 2005 Act expands the set of removable cases that it must use 'defendant' in a novel way.").

*Madigan, supra*, 2011 U.S. App. LEXIS 23036, **12-14.

Defendants argue that their customers are the real parties in interest because the damages will include a refund of excess charges under W. Va. Code § 46A-7-111(1). In *CVS Pharm.*, the State made a claim under the same state law, Section 46A-7-111(1), and the pharmacy defendants there emphasized **the same arguments**:

> In particular, [the removing pharmacies] pointed to Count III, which is dedicated to the remedy of collecting, on behalf of consumers, **excess charges under West Virginia Code § 46A-7-111(1).** That section provides that if an excess charge has been made, the court shall order the [defendant] to refund to the consumer the amount of the excess charge. *Id.*

646 F.3d at 173 (int. quote om.). *Compare* Def. Opp., 34.[10] Rejecting this argument -- the same one made on Response page 34 -- the Fourth Circuit said:

---

[10] Unable to distinguish the many cases rejecting the argument that attorney general actions on behalf of states are removable under CAFA (*see* Remand Mem., 27-33), Defendants summarily claim that the cases cited by the State in its Memorandum at 27, 32-33 are all distinguishable because, allegedly, none of them addressed the same statute. (Def. Opp., 34 n.45). Not only do

[T]he fact that the Attorney General is acting to obtain disgorgement of ill-gotten gains, separate and apart from the interests of particular consumers in obtaining recompense ... validates this action as a *parens patriae* action. *See In re Edmond*, 934 F.2d 1304, 1310 (4th Cir. 1991)...

646 F.3d at 176 (int. quote & cite om.).  Further, there was no basis for finding that the case is an "'interstate case of national importance,' the defining federal interest animating CAFA's removal provisions." *Id.* at 178 (cit. om.).  Addressing CAFA's "sensitiv[ity] to deeply-rooted principles of federalism," the Fourth Circuit concluded that to force the State to litigate in federal court would require a clear demand that did not exist in "essentially a *parens patriae* type of action for enforcement of its own laws on behalf of itself and its citizens." *Id.* at 178, 179.

Unable to address the Fourth Circuit's reasoning, Defendants instead analyze federal decisions out of the Fifth and Ninth Circuits and district courts outside of West Virginia.  *See* Def. Opp., 32-33, 35.  Defendants ignore the national chorus of disapproval of *Caldwell*.  *See* Remand Mem., 32-33.[11]  Just as Defendants cite a Seventh Circuit case without informing the Court that the Seventh Circuit recently rejected their argument, Defendants' invocation of a Ninth Circuit decision ignores that that Circuit also follows *CVS Pharm*. *See Washington v. Chimei Innolux Corp.*, 659 F.3d 843, 849 (9th Cir. 2011).  The Ninth Circuit case Defendants cite, by contrast, does not even mention CAFA.[12]

---

the Defendants fail to identify any alleged differences in language in these cases that would change the analysis, but it is not even accurate that there are differences in all of these cases.  In pages 27, 32, and 33 of the State's Remand Memorandum, *CVS Pharm*. is pin cited three times and referenced by name nine times, and it addresses the same statute, as quoted above.

[11] Another case cited by Defendants, *West Virginia ex rel. McGraw v. Comcast Corp.,* 705 F. Supp. 2d 441 (E.D. Pa. 2010), also has been criticized by some of the same courts critical of *Caldwell*.  *LG Display Co. v. Madigan, supra*, 2011 U.S. App. LEXIS 23036, **10-11 (rejecting *Caldwell* and *Comcast*'s claim-by-claim approach); *South Carolina v. LG Display Co.,* No. 3:11-cv-00729-JFA, 2011 U.S. Dist. LEXIS 104216, **13-16  (D. S.C. Sept. 14, 2011) (same); *Illinois v. Au Optronics, Inc.,* No. 10-cv-5720, 2011 U.S. Dist. LEXIS 61561, *19 (N.D. Ill. June 6, 2011) ("A number of courts have expressly taken issue with the [*Caldwell*] decision (followed by *Comcast*) on the ground that it disregarded the State's ostensible quasi-sovereign interest in at least some of the claims and 'pierced' the pleadings to find that unnamed parties were real parties in interest." (cit. om.)).

[12] *See Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.,* 642 F.3d 728 (9th Cir. 2011); *see also Connecticut v. Levi Strauss & Co.*, 471 F. Supp. 363 (D. Conn. 1979) (decided before CAFA).

2. *Cases brought on behalf of the public are specifically carved out of the "mass action" definition. 28 U.S.C. § 1332(d)(11)(B)(ii)(III).* One of the statutory exceptions to "mass actions" applies and independently excludes the cases from CAFA removal:

> … [T]he term "mass action" shall not include any civil action in which —
> … (III) all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action;

28 U.S.C § 1332(d)(11)(B)(ii)(III). This exception applies. *See CVS Pharm.*, 646 F.3d at 177 ("the West Virginia Attorney General's role here is more analogous to the role of the EEOC or other regulator when it brings an action on behalf of a large group of employees or a segment of the public" (cit. om.)). In plain language, Congress carved out Attorney General actions on behalf of states from the "mass action" definition:

> Moreover, a suit is not a mass action under 28 U.S.C § 1332(d)(11)(B)(ii)(III) if "all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action." **By the plain language of that provision, too, this case is not a mass action.**

*Madigan, supra*, **9-10 (emph. supp.); *Illinois v. AU Optronics Corp.*, No. 10-cv-5720, 2011 U.S. Dist. LEXIS 61561, *37 (N.D. Ill. June 6, 2011) ("'[b]ecause the State is a real party in interest and sues to protect and vindicate the rights of the public in general [under the IAA], this action is not a "mass action."'" (quoting *Connecticut v. Moody's Corp.*, 2011 U.S. Dist. LEXIS 780, 2011 WL 63905, *4 (D. Conn. Jan. 5, 2011)); *cf. Nat'l Consumers League v. General Mills, Inc.*, 680 F. Supp. 2d 132, 136 (D.D.C. 2010) ("The Court finds instead that CAFA carves out an exception for private attorney general suits" (cit. om.)).

3. *The amount of controversy is not met. 28 U.S.C. § 1332(d)(11)(B)(i).* The "mass action" subsection of CAFA has the following amount in controversy requirement:

> As used in subparagraph (A), the term "mass action" means any civil action (except a civil action within the scope of section 1711(2)) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that

**jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a).**

28 U.S.C. § 1332(d)(11)(B)(i) (emph. supp.).  Subsection (a) says, "the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs[.]"  28 U.S.C. § 1332(a).  "Federal courts may exercise jurisdiction only over those plaintiffs whose claims in a mass action exceed the jurisdictional threshold requirement of $ 75,000."  *Aburto v. Midland Credit Mgmt.*, No. 3:08-CV-1473-K, 2009 U.S. Dist. LEXIS 67467, *7 (N.D. Tex. July 27, 2009).[13]

According to Defendants, the amount in controversy is satisfied because the words "jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy" the $75,000-amount-in-controversy requirement means that if one plaintiff satisfies the $75,000 requirement then they all do.  While CAFA's "mass action" language has been the source of debate in the judiciary, Defendants are inaccurate in their representation (Def. Opp., 37), that the Ninth Circuit in *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006), allowed removal where but one plaintiff had at least $75,000 in controversy.  As one court has said, "[t]his is not a fair representation of *Abrego*... The court expressly left open the 'thorny' question of whether the statute requires that all 100 plaintiffs individually satisfy the $ 75,000 requirement."  *Adams v. Matrixx Initiatives, Inc.*, No. CV-09-1529-FJM, 2009 U.S. Dist. LEXIS 94587, **7-8 (D. Ariz. Sept. 24, 2009) (citing 443 F.3d at 682).  Indeed, the Ninth Circuit itself said in 2009 that, "In *Abrego Abrego*, we left open the question whether this clause requires that one hundred or more plaintiffs individually satisfy the $ 75,000 amount in controversy requirement for federal diversity jurisdiction to qualify as a 'mass action' under CAFA."  *Tanoh, supra*, 561 F.3d at 953.  This is a difficult issue that this Court need not resolve, given the other independent reasons for rejecting Defendants' "mass action" theory.

4.    *Because the State is not a citizen, there is no minimal diversity.  28 U.S.C. § 1332(d)(11)(A) & (d)(2).*  Subsection 1332(d)(11)(A) cross references, *inter alia*, 1332(d)(2),

---

[13] *Cf. Gilmore v. Bayer Corp.*, No. 09-986-GPM, 2009 U.S. Dist. LEXIS 115375, *13 (S.D. Ill. Dec. 10, 2009) (finding plaintiffs' claims "individually" exceed $75,000, exclusive of interest and costs).

which states a minimal diversity requirement. Because the State is not a citizen for purposes of diversity, this requirement, too, is not met. Remand Mem., 29 n.37 (citing cases).

5. *Since the filing of the State's remand motion, the Defendants in one of these cases has effectively admitted that the case is not a "mass actions."* 28 U.S.C. § 1332(d)(11)(C). Defendants Bank of America Corporation and FIA Card Services, N.A., filed a Notice of Potential Tag-Along Action with the Judicial Panel on Multidistrict Litigation. Defs' Not., Dkt. 19, 3:11-cv-0693 (S.D. W. Va. Nov. 14, 2011). Cases removed on mass action grounds cannot be transferred unless requested by a majority of plaintiffs. 28 U.S.C. § 1332(d)(11)(C)(i) ("Any action(s) removed to Federal court pursuant to this subsection shall not thereafter be transferred to any other court pursuant to section 1407, or the rules promulgated thereunder, unless a majority of the plaintiffs in the action request transfer pursuant to section 1407."). The only way in which this case could qualify as a potential tag-along as identified in Defendants' J.P.M.L. 7.1 notice is if the case is not removed on "mass action" grounds. Not only is the tag-along filing an acknowledgement by these Defendants that the "mass action" grounds are baseless, but the transfer prohibition itself further demonstrates why one plaintiff is not a "mass action" of 100. The language "a majority of the plaintiffs" makes no sense where there is only one plaintiff.

## IV.  CONCLUSION

The standard for adjudicating this motion is that "any doubts" are resolved in favor of remand. *Barbour v. Int'l Union*, 640 F.3d 599, 617 (4th Cir. 2011) (en banc). Far from meeting this standard, Defendants' removal theories fail the test of reasonableness. For the reasons stated herein and in the State's motions and opening memorandum, the cases should be remanded to the Circuit Court of Mason County, West Virginia, with the costs and fees of these remand proceedings assessed against Defendants.

DATED: <u>December 9, 2011</u>                    RESPECTFULLY SUBMITTED,

<u>/s/Frances A. Hughes</u>
Frances A. Hughes, WV Bar No. 1816
Chief Deputy of the Attorney General
Office of the Attorney General
State Capitol Complex
Building 1, Room E-26
Charleston, WV  25305
Telephone:  304-558-2021
Fax:  304-558-0140
Email: hughesafran@hotmail.com

<u>/s/ L. Lee Javins, II</u>
Guy R. Bucci, WV Bar No. 0521
Timothy Bailey, WV Bar No. 5839
L. Lee Javins, II, WV Bar No. 6613
Special Assistant Attorney General
Bucci Bailey & Javins LC
213 Hale Street
Charleston, WV  25301
Telephone:  304-345-0346; 1-800-497-0234
Fax:  304-345-0375
Email: gbucci@bbjlc.com
            timbailey@bbjlc.com
            ljavins@bbjlc.com

William Druckman, WV Bar No. 1061
The Law Offices of Druckman & Estep
Special Assistant Attorney General
606 Virginia Street East, Suite 100
Charleston, WV  25301
Telephone:  304-342-0367
Fax:  304-343-0099
Email: bill@druckmanlaw.com

Laura J. Baughman (TX Bar No. 00791846)
*Visiting Attorney Statement Filed*
Baron & Budd, P.C.
Special Assistant Attorney General
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Telephone:  214-521-3605
Fax:  214-520-1181
Email: lbaughman@baronbudd.com

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on December 9, 2011 I caused to be electronically filed the foregoing Plaintiff's Reply Memorandum in Support of Motions to Remand with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the counsel of record, listed below.

**ATTORNEY FOR PLAINTIFF**
Frances A. Hughes, WV Bar No. 181
Chief Deputy of the Attorney General
Office of the Attorney General
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25305
Telephone: 304-558-2021
Fax: 304-558-0140
Email: hughesafran@hotmail.com

**ATTORNEY FOR PLAINTIFF**
William S. Druckman
LAW OFFICES OF WILLIAM S.
DRUCKMAN
606 Virginia Street, East, Suite 100
Charleston, WV 25301
Telephone: 304/342-0367
Fax: 304/343-0099
Email: bill@druckmanlaw.com

**ATTORNEY FOR PLAINTIFF**
Laura J. Baughman
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Telephone: 214-521-3605
Facsimile: 214-520-1181
Email: lbaughman@baronbudd.com

**ATTORNEYS FOR BANK OF AMERICA CORPORATION & FIA CARD SERVICES, N.A.**
Alexander Macia
Bruce M. Jacobs
SPILMAN THOMAS & BATTLE
P.O. Box 273
Charleston, WV 25321
Telephone: 304-340-3800
Fax: 304-340-3801
Email: amacia@spilmanlaw.com
        bjacobs@spilmanlaw.com

**ATTORNEYS FOR BANK OF AMERICA CORPORATION & FIA CARD SERVICES, N.A.**
David L. Permut
Eric I. Goldberg
GOODWIN PROCTER
901 New York Avenue, NW
Washington, DC 20001
Telephone: 202-346-4000
Fax: 202-346-4444
Email: dpermut@goodwinprocter.com
        egoldberg@goodwinprocter.com

**ATTORNEYS FOR BANK OF AMERICA CORPORATION & FIA CARD SERVICES, N.A.**
Patrick S. Thompson
GOODWIN PROCTER
Three Embarcadero Center, 24th Floor
San Francisco, CA 94111
Telephone: 415-733-6000
Fax: 415-677-9041
Email: pthompson@goodwinprocter.com

**ATTORNEYS FOR CITIGROUP, INC. AND
CITIBANK, N.A.**
Christopher R. Lipsett
Robert W. Trenchard
WILMER CUTLER PICKERING HALE &
DORR
399 Park Avenue
New York, NY 10022
Telephone: 212-230-8800
Fax: 212-230-8888
Email: chris.lipsett@wilmerhale.com
        robert.trenchard@wilmerhale.com

**ATTORNEYS FOR CITIGROUP, INC. AND
CITIBANK, N.A.**
Jeffrey M. Wakefield
FLAHERTY SENSABAUGH & BONASSO
P.O. Box 3843
Charleston, WV 25338-3843
Telephone: 304-345-0200
Facsimile: 304-345-0260
Email: jwakefield@fsblaw.com

**ATTORNEYS FOR DISCOVERY FINANCIAL
SERVICES, INC., DISCOVER BANK AND DFS
SERVICES, L.L.C.**
Julia B. Strickland
Scott M. Pearson
STROOK & STROOK & LAVAN
2029 Century Park East, Suite 1800
Los Angeles, CA 90067
Telephone: 310-556-5800
Fax: 310-556-5959
Email: jstrickland@stroock.com
        spearson@stroock.com

**ATTORNEYS FOR DISCOVERY FINANCIAL
SERVICES, INC., DISCOVER BANK AND DFS
SERVICES, L.L.C.**
Kara Cunningham Williams
STEPTOE & JOHNSON
P.O. Box 1588
Charleston, WV 25326
Telephone: 304-353-8800
Fax: 305-353-8180
Email: Kara.Williams@steptoe-johnson.com

**ATTORNEY FOR ASSURANT, INC.**
Charles L. Woody
SPILMAN THOMAS & BATTLE
P.O. Box 273
Charleston, WV 25321
Telephone: 304-340-3800
Fax: 304-340-3801
Email: cwoody@spilmanlaw.com

**ATTORNEY FOR ASSURANT, INC.**
Frank G. Burt
JORDEN BURT
1025 Thomas Jefferson St. NW, Suite 400 E.
Washington, DC 20007
Telephone: 202-965-8100
Fax: 202-965-8104
Email: fgbjordenusa.com

**ATTORNEYS FOR FIRST PREMIER BANK,
FIRST PREMIER BANKCARD AND UNITED
NATIONAL CORPORATION**
J. David Bolen
Alexis B. Mattingly
HUDDLESTON BOLEN
P.O. Box 2185
Huntington, WV 25722
Telephone: 304-691-8405
Fax: 304-522-4312
Email: jbolen@huddlestonbolen.com
        amattingly@huddlestonbolen.com

**ATTORNEYS FOR FIRST PREMIER BANK,
FIRST PREMIER BANKCARD AND UNITED
NATIONAL CORPORATION**
Kim Ruckdaschel-Haley
Mark S. Enslin
LINDQUIST & VENNUM
4200 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: 612-371-2400
Fax: 612-371-3207
Email: kruckdaschel-haley@lindquist.com
        menslin@lindquist.com

**ATTORNEYS FOR GE MONEY BANK**
David B. Thomas
Bryant J. Spann
Christopher S. Dodrill
GUTHRIE & THOMAS
P.O. Box 3394
Charleston, WV 25333
Telephone: 304-345-7250
Fax: 304-345-9941
Email: dbthomas@agmtlaw.com
        bjspann@agmtlaw.com
        csdodrill@agmtlaw.com

**ATTORNEYS FOR HSBC BANK NEVADA, N.A.
AND HSBC CARD SERVICES, INC.**
Julia B. Strickland
David W. Moon
STROOK & STROOK & LAVAN
2029 Century Park East, Suite 1800
Los Angeles, CA 90067
Telephone: 310-556-5800
Fax: 310-556-5959
Email: jstrickland@stroock.com
        dmoon@stroock.com

**ATTORNEYS FOR HSBC BANK NEVADA, N.A.
AND HSBC CARD SERVICES, INC.**
W. Scott Campbell
Christopher R. Arthur
SAMUEL I. WHITE
300 Capitol Street, Suite 1600
Charleston, WV 25301
Telephone: 304-414-0200
Fax: 304-414-0202
Email: wcampbell@siwpc.com
        carthur@siwpc.com

**ATTORNEYS FOR JPMORGAN CHASE & CO.
AND CHASE BANK USA, N.A.**
Andrew A. Ruffino
COVINGTON & BURLING
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: 212/841-1097
Fax: 646/441-9097
Email: aruffino@cov.com

**ATTORNEYS FOR JPMORGAN CHASE & CO.
AND CHASE BANK USA, N.A.**
Robert D. Wick
Andrew James Soukup
COVINGTON & BURLING
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: 202/662-5487
Fax: 202/778-5487
Email: rwick@cov.com
        asoukup@cov.com

**ATTORNEYS FOR JPMORGAN CHASE & CO.
AND CHASE BANK USA, N.A.**
Thomas H. Ewing
William W. Booker
KAY CASTO & CHANEY
P. O. Box 2031
Charleston, WV 25327-2031
304/345-8900
Fax: 304/345-8909
Email: tewing@kaycasto.com
        b.booker@kaycasto.com

**ATTORNEYS FOR WORLD FINANCIAL
NETWORK NATIONAL BANK**
Charles M. Love, III
P. Michael Pleska
BOWLES RICE MCDAVID GRAFF &
LOVE
P.O. Box 1386
Charleston, WV 25325
Telephone: 304-347-1100
Fax: 304-347-1756
Email: clove@bowlesrice.com
        ppleska@bowlesrice.com

**ATTORNEY FOR CSI PROCESSING, LLC**
Russell D. Jessee
STEPTOE & JOHNSON
P.O. Box 1588
Charleston, WV 25325
Telephone: 304-353-8103
Fax: 304-353-8725
Email: Russell.Jessee@steptoe-johnson.com

**ATTORNEYS FOR CPP NORTH AMERICA,
LLC**
Alexander Macia
Bruce M. Jacobs
SPILMAN THOMAS & BATTLE
P.O. Box 273
Charleston, WV 25321
Telephone: 304-340-3800
Fax: 304-340-3801
Email: amacia@spilmanlaw.com
        bjacobs@spilmanlaw.com

Date: December 9, 2011          /s/L. Lee Javins, II
                                L. Lee Javins, II

25